JS-6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> EASTERN EXPRESS LLC, EASTERN LOGISTIC COMPANY, GUANGYONG ZHU, and Zhejiang JIYUE Import & Export Co. Ltd. <br><br> Defendants. | Case No. 2:24-cv-05936-CAS-AGRx <br><br> **JUDGMENT AND PERMANENT INJUNCTION** |

Plaintiff's Motion for Entry of Default Judgment was properly noticed and served and was noticed for hearing on February 24 at 10:00 a.m. The Court rules as follows:

**I.    SUMMARY OF THE COMPLAINT**

A.    Patagonia has filed a Complaint alleging trademark infringement, trademark dilution, and unfair competition under federal and state law; and counterfeiting and copyright infringement under federal law against Defendants Eastern Express LLC, Eastern Logistic Company, and Guangyong Zhu ("Defendants"). Patagonia alleges that Defendants have imported, with the intent to sell to consumers, products, including apparel, bearing designs and logos that are identical to Patagonia's registered trademarks, including the P-6 logo, and reproduce

Patagonia's copyrighted design. Defendants have failed to respond to Patagonia's Complaint, and default was entered against Defendants on October 18, 2024. Dkt. 15.

**II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW**

  B. This Court has subject matter jurisdiction over this lawsuit and personal jurisdiction over Defendants. Venue is proper in this Court.

  C. Patagonia's P-6 logo – a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline framed by a stormy sky – is protected by federal trademark registrations (Reg. Nos. 1294523, 1547469, and 1775623, among others), as well as a registered copyright (Registration No. VA 1-801-788). Patagonia has continuously used its P-6 logo to brand and distinguish its products since at least 1973. Dkt. 1 ("Complaint") ¶¶ 9-10.

  D. Patagonia marks many of its products with its P-6 logo and its PATAGONIA trademark, which is also protected by numerous federal trademark registrations (Reg Nos. 1189402, 1811334, 2392685, and 2662619, among others) (collectively with the P-6 logo, the "Patagonia Marks"). Complaint ¶ 12.

  E. Defendant has promoted, offered for sale, and sold products, including T shirts, that use counterfeit copies, infringe, and dilute the Patagonia Marks, including the P-6 logo, and reproduce Patagonia's copyrighted design (the "Counterfeit Products"). Complaint ¶¶ 16-23.

  F. Defendant imported the Counterfeit Products into this district. Declaration of Paymaneh Parhami in Support of Motion for Default Judgment ("Parhami Decl.") ¶ 8 and Ex. F.

  G. The Counterfeit Products are identical and substantially similar to the copyrighted P-6 logo artwork, and identical and confusingly similar to the Patagonia Marks, including the registered PATAGONIA Mark and P-6 logo trademark. They compete with Patagonia's products, and are likely to erode substantial goodwill that Patagonia has accumulated in its distinctive trademarks over many years.

### III. CONCLUSIONS OF LAW

H. Once a defendant has defaulted, the well-pleaded allegations of the complaint are accepted as true, and the defendant's liability as framed by the complaint is established. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995).

I. In exercising its discretion as to whether default judgment should be entered, the court considers the seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the "*Eitel* factors").

J. All of the seven *Eitel* factors favor entry of default judgment.

K. The Counterfeit Products bear counterfeit copies of, infringe, and dilute the Patagonia Marks (including the PATAGONIA Mark and P-6 logo) and infringe Patagonia's copyright rights in its P-6 logo.

L. Because Defendants have imported with the intent to sell to consumers and used in commerce counterfeit copies of Patagonia's registered Patagonia Marks on identical products, Patagonia is entitled to statutory damages based on counterfeiting. 15 U.S.C. § 1114. The Lanham Act provides for statutory damages up to $200,000, and $2,000,000 for willful infringement. 15 U.S.C. § 1117(c)(2). Because Defendants (a) used an identical mark on identical goods, (b) failed to respond to Patagonia's Complaint, and (c) obstructed Patagonia's efforts to determine its damages and stop the infringements by failing to respond to its

Complaint, their conduct is deemed willful. An award of $200,000 in statutory damages is conservative and appropriate under these circumstances. *See, e.g., Microsoft Corp. v. Buy More, Inc.*, NO. CV–14–9697–R, 2015 WL 12748628 (C.D. Cal. Nov. 17, 2015) (granting maximum statutory damages for non-willful infringement under both the Lanham and Copyright Acts, as well as under the Anti-Counterfeiting Amendment Act of 2004, totaling $910,000.00 in statutory damages (of which $800,000 was for counterfeiting), and an attorneys' fees award of $21,800.00 and injunctive relief, on a motion for default judgment).

      M. Because Defendants have infringed Patagonia's registered copyright rights, Patagonia is also entitled to statutory damages based on copyright infringement. 17 U.S.C. § 412 and § 504. A plaintiff may request statutory damages under both the Lanham Act and the Copyright Act simultaneously. *Nintendo of Am., Inc. v. Dragon Pac. Intern.*, 40 F.3d 1007, 1011 (9th Cir. 1994). The Copyright Act provides for statutory damages up to $30,000, and $150,000 for willful infringement. 17 U.S.C. § 504. Because Defendants (a) directly copied Patagonia's P-6 logo design, (b) failed to respond to Patagonia's Complaint, and (c) obstructed Patagonia's efforts to determine its damages and stop the infringements by failing to respond to its Complaint, their infringement is deemed willful. An award of $30,000 in statutory damages is conservative and appropriate under these circumstances. *See, e.g., Microsoft Corp.*, 549 F. Supp. 2d at 1238 (approving award of $30,000 per work infringed as just and appropriate); *see also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (after default, awarding statutory damages of $30,000 for each of seven copyrights at issue); *see also Arista Records, Inc. v. Beker Enters. Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (after default, awarding statutory damages of $35,000 for each of 54 infringements, for a total of $1,890,000 plus interest).

N.  Patagonia is also entitled to costs and an award of attorneys' fees. 17 U.S.C. § 505.  Local Rule 55-3 provides for a base fee award of $5,600 plus, based on the award of $230,000 in total statutory damages, an additional $2,600, totaling $8,200.

O.  Both the Lanham Act and Copyright Act authorize courts to grant permanent injunction on reasonable terms to prevent future violations.  17 U.S.C. §§ 502(a); 15 U.S.C. § 1116 (vesting the district court with the "power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of a trademark owner).  "It is well established that courts can issue injunctions as part of default judgments." *China Cent. Television v. Create New Tech*. (HK) Ltd., 2015 WL 12732432, at *19 (C.D. Cal. Dec. 7, 2015) (*quoting Sony Music Entm't, Inc. v. Elias*, No. CV 03–6387 DT (RCx), 2004 WL 141959, *3 (C. D. Cal. Jan. 20, 2004)).

P.  Defendants' actions have caused and, unless enjoined, will cause Patagonia irreparable harm for which money damages are inadequate. Complaint ¶ 23.  A permanent injunction is warranted here because Patagonia has demonstrated (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that it is in the public's interest to issue the injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." *Id*. at 394.

Q.  A permanent injunction is an appropriate remedy where there is a likelihood of future infringement.  "Likelihood of future infringement…generally leads to a finding of irreparable harm 'given the difficulty of protecting a right to exclude through monetary remedies that allow an infringer to use [a protected work] against the [rightholder's] wishes.'" *Sanrio, Inc. v. Torres*, No. CV 14-03736, 2015

WL 12661916, at *10 (C.D. Cal. Jan. 5, 2015) (*citing eBay*, 547 U.S. at 395 (Roberts, C.J., concurring)). This is the case here, and Patagonia can only be protected from further irreparable harm through entry of an injunction.

**IV.   ORDER OF JUDGMENT**

  R. It is hereby ordered and adjudged as follows:

    1. Judgment is entered in favor of Patagonia against Defendants.

    2. Defendants shall pay Patagonia $230,000 in statutory damages.

    3. Patagonia is entitled to collect its reasonable attorneys' fees and costs in the amount of $8,200.

    4. Commencing as of the "So Ordered" date of this Final Judgment and Permanent Injunction, Defendants, their principals, officers, agents, employees, attorneys, successors, assigns, affiliates, joint ventures, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through, or under their control, who receive(s) actual notice of this Order, are hereby permanently enjoined and restrained, anywhere in the world, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following until such time as this Order is dissolved or modified by further Court order:

      a. Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying the Counterfeit Products, or participating in the manufacture, license, sale, offer for sale, distribution, import, export, advertisement, promotion, or display of the Counterfeit Products or any other designation and/or design that is as similar to the Patagonia Marks, including the PATAGONIA Mark and P-6 logo (hereinafter collectively the "Prohibited Designs and Designations");

      b. Using any word, term, name, symbol, device, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendants or their products or services with Patagonia or Patagonia's goods or services, or as to the origin of

Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

c. Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any goods or services, or participating in the manufacture, license, sale, offer for sale, distribution, import, export, advertisement, promotion, or display of any goods or services, that display a copy of Patagonia's copyrighted P-6 design, or any other graphic that is substantially similar to the P-6 design;

d. Further infringing the rights of Patagonia in and to its trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

e. Further diluting the Patagonia Marks, including the famous PATAGONIA Mark and P-6 logo;

f. Further infringing Patagonia's copyright rights, or otherwise infringing any of Patagonia's rights under the Copyright Act and any other source of federal or state law;

g. Otherwise competing unfairly with Patagonia in any manner;

h. Applying, now or in the future, for the federal registration of trademarks for any of the Prohibited Designs and Designations;

i. Licensing or assigning the assets or beneficial ownership or control of assets associated with the production of goods bearing the Prohibited Designs and Designations, without disclosing and providing actual notice of this Final Judgment and Permanent Injunction to the licensee, buyer, or assignee of such trademarks or assets;

j. Refusing refunds to any retailer, wholesaler, jobber, distributor, or other seller located in the United States or its territories which, upon receiving notice of this Injunction, returns products to Defendants bearing the Prohibited Designs and Designations;

    k. Assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this Final Judgment and Permanent Injunction;

   5. This Injunction shall apply to the fullest extent of this Court's jurisdiction. This is a final judgment as to all claims asserted against Defendants in this action;

   6. This Court shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this Final Judgment and Permanent Injunction, the enforcement thereof, and/or the punishment for any violations thereof. If Patagonia commences an action for enforcement of this Final Judgment and Permanent Injunction, the prevailing party shall be awarded reasonable attorneys' fees and costs from the other party, for both the action enforcing this Judgment and the underlying litigation.

  **IT IS SO ORDERED.**

Dated: February 24, 2025

            */s/ Christina A. Snyder*
            Hon. Christina A. Snyder
            United States District Judge